Baltic Fourth LLC v Stern (2021 NY Slip Op 02591)





Baltic Fourth LLC v Stern


2021 NY Slip Op 02591


Decided on April 29, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 29, 2021

Before: Gische, J.P., Singh, Moulton, González, JJ. 


Index No. 654881/18 Appeal No. 13291 Case No. 2019-04889 

[*1]Baltic Fourth LLC, etc., et al., Plaintiffs-Respondents,
v
Michael Stern et al., Defendants-Appellants. Fourth Avenue JV LLC et al., Nominal Defendants.


Kasowitz Benson Torres LLP, New York (Paul M. O'Connor III of counsel), for appellants.
Westermann Sheehy Keenan Samaan & Gillespie, LLP, East Meadow (Michael F. McGowan of counsel), for respondents.



Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered October 18, 2019, which denied in part defendants' motion to dismiss the complaint, and order, same court and Justice, entered on or about March 25, 2020, which, upon reargument, adhered to the prior determination, unanimously affirmed, without costs.
This action arises from a project to develop residential condominiums in Brooklyn on properties previously owned by nonparty Domenick Tonacchio. Preliminary to the project's commencement, title to the properties was transferred to plaintiff Fourth Avenue Property Owner, LLC (Property Owner) in January 2014. In April 2014, Tonacchio's company, plaintiff Baltic Fourth LLC (Baltic), and defendant JDS Fourth Avenue LLC (JDS Fourth), an entity controlled by defendant Michael Stern, entered into a Joint Venture Agreement (JVA). Under the JVA, JDS Fourth was the managing member, responsible for the day-to-day business operations of the Joint Venture. JDS Fourth's duties included maintenance of the Joint Venture's books and records, the issuance of capital calls, the distribution of profits, and the reimbursement of expenses. It was to provide Baltic with regular financial reporting, continuous access to the Joint Venture's books and records, and annual budgets for Baltic's approval. JDS Fourth had the right to make all decisions except for certain "Major Decisions," which required the approval of Baltic.
The JVA provided that profits from the venture, denominated "Distributable Funds," were to be distributed pursuant to a "waterfall" provision whereby Baltic, after receiving an initial payment of $1 million coinciding with the acquisition of the property and an additional $1 million a few months after the acquisition, would be paid the first $14 million in Distributable Funds. Following Baltic's receipt of the first $16 million of Distributable Funds, JDS Fourth was to receive the next $5 million, and the remaining Distributable Funds would be split evenly between the two based on their equal interests in the Joint Venture.
Section 8.5 of the JVA limited JDS Fourth's duties and liabilities to the Joint Venture or any of the Members, including any fiduciary duties. This limitation was not absolute, however. The JVA states:
"[T]his Section 8.5 shall not eliminate or limit the liability of such parties (i) for acts or omissions that involve fraud, intentional misconduct or a knowing and culpable violation of law, or (ii) for any transaction not permitted or authorized under or pursuant to this Agreement from which such party derived a personal benefit unless all of the Members have approved in writing such transaction; . . . the duty of care of each of such parties is to not commit fraud, intentional misconduct or a knowing and culpable violation of law [emphasis omitted]."
Section 8.6(b) of the JVA, entitled "Liability [of Manager] to the [Joint Venture] and Other Members," provided that JDS Fourth and its "Affiliated [*2]Persons" shall have "no liability to the [Joint Venture] or to any other Member for any loss suffered by the [Joint Venture] which arises out of any action or inaction of [JDS Fourth] or its Affiliated Persons" unless such conduct "constitute[s] fraud, criminal acts, gross negligence or willful misconduct."
The JVA provides that plaintiff Tona Construction & Management LLC (Tona), owned by Tonacchio, "shall be the initial construction manager" on the project and entitled to a specified construction management fee. However, the appointment of Tona was made contingent on approval of the "construction lender." Further, JDS Fourth was permitted to terminate Tona as construction manager "for any reason or no reason."
The complaint alleges that Stern used the construction loan application process to freeze out Tona and substitute his own company, defendant JDS Construction Group, LLC (JDS Construction), as construction manager. According to plaintiffs, Stern forged Tonacchio's signature on construction loan application documents in furtherance of that scheme. Plaintiffs allege that on April 28, 2016, Stern orchestrated a Construction Management Agreement (CMA) between Property Owner and JDS Construction whereby JDS Construction became the construction manager for the project. Defendants dispute aspects of plaintiffs' account, and aver that Tona was rejected by the construction lender, an event contemplated by the JVA that ended any entitlement that Tona had to the construction manager position. According to plaintiffs, Stern used the CMA and his control over JDS Fourth and JDS Construction to enrich himself and his companies at the expense of Tonacchio's companies and the Joint Venture.
In December 2018, Baltic (directly and derivatively on behalf of the Joint Venture), Property Owner, and Tona brought the instant action against Stern, JDS Fourth, and JDS Construction, asserting 14 causes of action, including, as relevant to this appeal, causes of action for a declaratory judgment (first), breach of contract (second, third, fourth, fifth, tenth), breach of fiduciary duty (eighth, twelfth), and fraud (ninth, fourteenth). In the first amended complaint, plaintiffs allege, generally, that Stern and his affiliates treated the Joint Venture not as a partnership but rather as a vehicle from which Baltic could be marginalized while defendants inflated project costs and distributed proceeds to Stern's other entities in derogation of the JVA's waterfall provision and without the accountability contemplated by the JVA. The complaint alleges alter ego liability against Stern, averring that he dominated JDS Fourth for purposes of carrying out this scheme. 
Accepting the truth of the facts alleged in the complaint and according plaintiffs the benefit of every possible favorable inference (see Leon v Martinez, 84 NY2d 83, 87—88 [1994]), the court correctly denied defendants' motion to dismiss the disputed counts and properly adhered to its decision [*3]upon reargument. Defendants state that, at most, the complaint pleads breach of contract claims among the relevant signatories, although they do not quite concede the viability of even those claims. Defendants argue that there is no basis for holding Stern in the case on an alter ego theory of liability, that Tona is not a third-party beneficiary of the JVA, and that the causes of action not sounding in contract are duplicative, barred by the relevant agreements, or inadequately pleaded.
The court correctly declined to dismiss the portions of the causes of action for breach of contract that seek to hold Stern individually liable. Plaintiffs' allegations of an absence of corporate formalities, inadequate capitalization, and the commingling of funds, as well as the specific allegations that Stern engaged in fraud, are sufficient to withstand this pre-answer motion to dismiss the complaint, based on alter ego liability, as against Stern (see Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 47 [2018]). Defendants' reliance on Aspire Music Group, LLC v Cash Money Records, Inc. (169 AD3d 441 [1st Dept 2019]) is misplaced. In that case, the defendant against whom alter ego liability was asserted did not exercise its alleged domination of a joint venture member to commit fraud and malfeasance against the joint venture.
The complaint adequately alleges that Tona is a potential third-party beneficiary of the JVA's provision stating that Tona "shall be" the construction manager on the project, to be paid a fee of 3% of the "hard costs" of the project. It is true that Tona's appointment as construction manager is specifically made contingent on the approval of the construction lender. Tona's appointment is also subject to the ongoing approval of JDS Fourth, as the managing member, which retained the right to terminate Tona "for any reason or no reason." While this language casts some doubt on the parties' intent in specifically naming Tona (see Edward J. Minskoff Equities, Inc. v Crystal Window & Door Sys., Ltd., 92 AD3d 469 [1st Dept 2012] [contradictory language in the parties' agreements gives rise to a triable issue of fact concerning whether the parties intended to create third-party beneficiary rights]), it is sufficient at the pleading stage that the JVA appears to embody the signatories' intent to benefit Tona, thereby potentially conferring third-party beneficiary rights on Tona (see Commissioner of the Dept of Social Servs. of the City of N.Y. v New York- Presbyt. Hosp., 164 AD3d 93, 98-100 [1st Dept 2018], lv denied 33 NY3d 901 [2019]).
The court correctly found that the complaint sufficiently pleads facts giving rise to independent fraud claims that are not duplicative of the breach of contract causes of action. The breach of fiduciary duty claims are not barred by the JVA. While JDS Fourth's duties to Baltic and the Joint Venture were circumscribed by the JVA, there are sufficient facts alleged in the complaint concerning fraud [*4]and self-dealing to implicate the duties that remained under sections 8.5 and 8.6 of the JVA. The complaint adequately alleges derivative claims on behalf of the Joint Venture by alleging damages not suffered by Baltic alone (see Yudell v Gilbert, 99 AD3d 108, 113-115 [1st Dept 2012]).
We have considered defendants' remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 29, 2021