Youyi Chen v 215 Chrystie Venture, LLC (2023 NY Slip Op 50716(U))

[*1]

Youyi Chen v 215 Chrystie Venture, LLC

2023 NY Slip Op 50716(U)

Decided on July 13, 2023

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 13, 2023
Supreme Court, New York County

Youyi Chen, YULIAN CHEN, SHAOJUAN FANG, QIAN HU, XIAOLING JI, YUE JIANG, SONGPING KE, GUANGZHENG KUANG, ENHONG LI, HONGWU LI, JIE LIAO, YONG LIU, JI LIU, YUANHUI LIU, WENYAN LIU, XUMEI MAN, JING PEI, HONGMEI QIN, HAIJING SONG, NA SUN, XUN SUN, YANAN WAN, LI WEN, XIAOPING XIAO, QIAN YANG, JIANHUA YAO, XINHONG ZENG, MINGYUE ZHANG, YUANPEI ZHANG, CHENG ZHANG, YUAN ZHANG, SHUIQING XU, JIA ZHOU, LIN ZHOU, QING ZHOU, XIAOCAI ZHU, YIZHI ZHU, Plaintiff,

against
215 Chrystie Venture, LLC, 215 CHRYSTIE INVESTORS, LLC, THE IAN SCHRAGER COMPANY, THE WITKOFF GROUP, LLC, Defendant.

Index No. 655908/2020

Attorneys for Plaintiff:
Jeremy E Deutsch of Cozen O'Connor
Tamar S Wise of Cozen O'Connor
Christian Cangiano of Cozen O'Connor
Attorneys for the Defendants:
Remy J Stocks of Meister Seelig & Fein
Eva Marie Sullivan of Meister Seelig & Fein 
Stephen B. Meister of Meister Seelig & Fein
Benjamin Bianco of Meister Seelig & Fein

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 14, 15, 16, 17, 18, 24, 25, 29, 30, 31, 32, 34 were read on this motion to/forDISMISS.
Plaintiffs, 37 foreign nationals ("plaintiffs" or "investors"), bring this action against defendants 215 Chrystie Venture, LLC, 215 Chrystie Investors, LLC, The Ian Schrager Company, and The Witkoff Group, LLC ("defendants"), asserting six causes of action: for fraud, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, accounting, and constructive trust, based upon their investments in a commercial development, under what is known as the EB-5 Immigrant Investment Program ("EB-5 Program").[FN1]
In motion sequence number 001, defendants collectively move to dismiss the complaint in its entirety, pursuant to CPLR 3211(a)(1), (3), and (7).

 BACKGROUND
Plaintiffs are Chinese nationals who took part in the EB-5 Program to secure permanent resident status in the United States (NYSCEF No. 7 at 9). Plaintiffs describe themselves as unsophisticated investors with little or no proficiency in English and with limited knowledge about the U.S. real estate market (id. at 35). Pursuant to the EB-5 Program, each of the plaintiffs invested $549,000 in Manhattan Chrystie Street Development Fund, LLC ("MCSDF" or "the fund"), a non-party to this action, for the development of a project that included the construction of a new mixed-use commercial building containing what would become the 374-room PUBLIC Hotel and 11 residential condominium units (id. at 7, 9). Upon receiving plaintiffs' funds, MCSDF was to aggregate the equity investment portion of plaintiffs' money and invest that money in 215 Investors — for which MCSDF was to receive a "preferred equity" interest in 215 Investors (id. at 10). Plaintiffs allege, however, that they never acquired membership interests in 215 Investors, and that, instead, their interests were solely connected to MCSDF.
Plaintiffs further allege that 215 Investors was exclusively managed by 215 Venture, LLC ("215 Venture" or "the managing member"), which was jointly controlled and owned by the Witkoff and Schrager entities (id. at 15). Plaintiffs therefore contend that all defendants had a direct interest in inducing plaintiffs' investments into MCSDF, as such funds would directly [*2]flow to them; accordingly, plaintiffs allege, all defendants were the ultimate beneficiaries and recipients of the funds invested by plaintiffs (id. at 25-26). Plaintiffs also allege that defendants acted as promoters and solicitors for the investments in question and that Witkoff and Schrager were touted as having specialized skill and expertise in the U.S. real estate market generally, and in the development and operation of the project specifically (id at 36). In their capacity as promoters with specialized skill and expertise, Witkoff, Schrager, and 215 Venture were responsible for compiling, crafting and confirming the accuracy of information presented to plaintiffs concerning the nature and structure of their investment in the project (id. at 47-48, 50).
Prior to investing in the project, plaintiffs received a confidential private offering memorandum, dated June 14, 2013 (the "OM"), describing how the project would function, what the project would do, how the project was to be financed, and the financial and operational details of the investment (id. at 8). The OM was intended to convince investors to invest in the project (id. at 9). The OM was not drafted by defendants, but instead it was drafted, approved, and distributed by MCSDF, which is not a named defendant in this action (id.) Still, according to the OM, certain "information, financial statements, statistics and graphics" were "compiled" by defendants, and "information about the Owner and the Project contained [in the OM] was also provided by [Defendants]" (id. at 48; OM, NYSCEF No. 18, at 34). With respect to defendants' involvement in compiling and providing information for the OM, the OM also declares that the OM "is not an offering of [Defendants]" and that "none of the [Defendants] nor any of their respective affiliates make any representations or warranties with respect to the adequacy of the disclosures in this [OM]" (OM at 5-6).
Plaintiffs contend that the OM contains multiple material misrepresentations and omissions attributable to defendants which were reasonably relied upon by plaintiffs in deciding to make their investment in the project. First, the OM allegedly represents that plaintiffs' investments would be used to purchase a preferred equity interest in the 215 Investors, such that plaintiffs would have an indirect equity interest in the project and would share in the profits and losses associated with the completion of the project (Complaint at 57). Plaintiffs allege that statements in the OM regarding the nature of their investment were false and misleading when made since plaintiffs' investment was effectively nothing more than an unsecured junior loan (id. at 58).
The OM also represents that "[t]he proceeds of the Qualifying Investment will be used by the Venture to fund the construction costs of condominium and hotel portions of the Project" (id. at 59). This representation too was allegedly misleading and untrue when made, plaintiffs allege, since between 2015 and 2019, instead of using the investments to fund the project, defendants diverted to themselves and their own use some $109 million from the project funds (id.). The OM also allegedly falsely represents that the defendants were putting their own capital at risk and that such capital would remain at risk throughout the life of the project (id. at 39).
Plaintiffs further contend that the OM was also misleading when made in that it inaccurately and falsely summarizes the terms of the 215 Investors' operating agreement (the "OA"), which is a contract between 215 Investors and MCDSF, pursuant to which MCDSF ultimately invested in 215 Investors. According to the complaint, defendants drafted the OA and were responsible for summarizing it in the OM and confirming the accuracy of statements concerning the OA in the OM (id. at 67). The OA allegedly reinforces the false and misleading narrative that plaintiffs would have an indirect equity interest in 215 Investors by investing in MCSDF, and that MCSDF would be treated as a "member" of 215 Investors (id. at 69-70). [*3]Likewise, it is alleged that the schedules to the OA are misleading and false in that they omit material information. Specifically, Schedule 1 to the OA purports to list the "Names and Addresses of Members" and lists 215 Chrystie Venture LLC and MCSDF as members, when MCSDF was not actually a "member" of 215 investors in any way that a reasonable investor would allegedly understand that term (id. at 72, 76).
Ultimately, the project was completed. All the condominium units were sold and the hotel commenced operations (id. at 88). No part of plaintiffs' investment has been repaid (id. at 87). Defendants also extended the repayment date for another five years, and plaintiffs allege that, now, plaintiffs are the only parties exposed to the massive debt the defendants loaded onto the project.

 ARGUMENTS
Plaintiffs first argue that defendants' conduct constitutes fraud because plaintiffs were induced by defendants' fraudulent misrepresentations and omissions to invest in MCSDF and then in the project. Plaintiffs understood, based on representations made in the OM, that they were investing as indirect equity owners in 215 Investors and thus would have shared in distributions of profits (and incurred any losses) from the development and operation of the project. Instead, their investment was treated as an unsecured junior loan, rendering payments owed to plaintiffs due at a significantly later date than payments owed to investors with equity interests in the project. Considering thier lack of sophistication, plaintiffs argue, it was reasonable for them to rely on statements provided in the OM, especially since defendants were hailed as experts with specialized skill and knowledge. Plaintiffs further argue that had they known of the true structure of their investment, they would either not have invested in the project or would have insisted on substantial changes. Alternatively, plaintiffs also argue that, at a minimum, defendants' omissions and misstatements constitute negligent misrepresentation.
Plaintiffs' third cause of action is for breach of fiduciary duty. Plaintiffs argue that defendants, as promoters of investments in the project, owed each plaintiff a fiduciary duty of good faith, loyalty, and full and fair disclosure of all material facts and information relevant to the investment decision presented to plaintiffs. Defendants breached their respective fiduciary duties by concealing and failing to disclose the true structure of the investment and by failing to disclose their intentions concerning their own investment of capital and their intention to eliminate their exposure to the risk of the project by taking their capital out through excessive and unwarranted distributions.
Plaintiffs also argue that defendants' removal of no less than $109 million, for their own benefit and use, constitutes unjust enrichment. Finally, plaintiffs assert that defendants' alleged misconduct entitles plaintiffs to a claim for accounting and constructive trust.
Defendants seek to dismiss each of the causes of actions, with prejudice. Defendants' principal argument is that plaintiffs do not have standing to pursue any of the claims because they lack privity with defendants. Defendants argue that all claims asserted by plaintiffs in this action fall into one of two categories: they either lie against MCSDF (which is a non-party to this action) or are derivative in nature and belong to MCSDF, and not to plaintiffs individually. Yet plaintiffs have neither asserted direct claims against, nor derivative claims on behalf of MCSDF. Plaintiffs therefore lack standing to pursue their claims, defendants argue. Separately, defendants assert, plaintiffs' claim for fraud should be dismissed in any event, as no statement or representation made in the OM can be attributed to defendants, as the OM was drafted, signed and distributed by MCSDF.
Defendants also argue that they do not owe plaintiffs any special or fiduciary duties, even if plaintiffs can establish standing. Plaintiffs are not investors in (or members of) any of defendants, including 215 Investors, and New York law is clear: controlling members and managers of LLC's do not owe any special or fiduciary duties to non-members. Given that plaintiffs have not pled any recognized special or fiduciary relationship with defendants, plaintiffs' second (negligent misrepresentation), third (breach of fiduciary duty), fifth (accounting), and sixth (constructive trust) causes of action should all be dismissed, as each requires the existence of a special or fiduciary relationship between the parties. And, finally, as it relates to plaintiffs' claim for unjust enrichment, to the extent defendants' took fees or funds improperly from 215 Investors, the proper cause of action is for one of the contracting parties to bring a breach of contract action against 215 Investors, not an unjust enrichment claim by a party without standing.

 LEGAL STANDARD
On a motion to dismiss pursuant to CPLR 3211, "the pleading is to be afforded a liberal construction" and the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v. Martinez, 84 NY2d 83, 87 [1994]); Rovello v. Orofino Realty Co., 40 NY2d 633, 634 [1976] ["a complaint should not be dismissed on a pleading motion so long as, when the plaintiff is given the benefit of every possible favorable inference, a cause of action exists."]; Wiener v Lazard Freres & Co., 241 AD2d 114, 120 [1st Dep't 1998]). However, unsupported assertions and conclusions of law will not suffice to state a cause of action (see WFB Telecomms., Inc. v. NYNEX Corp., 188 AD2d 257, 259 [1st Dep't 1992]).
On a motion to dismiss for lack of standing pursuant to CPLR 3211(a)(3), "the burden is on the moving defendant to establish, prima facie, the plaintiff's lack of standing, rather than on the plaintiff to affirmatively establish its standing in order for the motion to be denied. [Whereas] [t]o defeat a defendant's motion, the plaintiff has no burden of establishing its standing as a matter of law; rather, the motion will be defeated if the plaintiff's submissions raise a question of fact as to its standing" (Phoenix Grantor Trust v. Exclusive Hospitality, LLC, 172 AD3d 923, 925-26 [2nd Dep't 2019] [internal citations and punctuation omitted]).
Finally, "dismissal under CPLR 3211(a)(1) is warranted 'only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law'" (511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 NY2d 144, 152 [2002] [citing Leon, 84 NY2d at 88]). Further, under CPLR 3211(a)(7), "the moving party 'must convince the court that nothing the plaintiff can reasonably be expected to prove would help; that the plaintiff just doesn't have a claim'" (Natixis Real Est. Cap. Tr. 2007-HE2 v. Natixis Real Est. Holdings, LLC, 149 AD3d 127, 136 [1st Dep't 2017]).

DISCUSSION
1. Are plaintiffs' claims derivate in nature, thus warranting a dismissal?
Defendants argue that plaintiffs' claims are derivative and thus plaintiffs lack standing. They argue that "each of Plaintiffs' causes of action alleges injury or breaches of fiduciary duties to MCSDF and Plaintiffs, and not independently and exclusively to the individual Plaintiffs, as required under the Tooley test for a direct claim" (Moving Brief at 11-12). Defendants highlight [*4]that under New York law, a member of an LLC lacks standing to pursue "a direct claim to redress the wrongs" allegedly suffered by the entity, as "such claims must be asserted derivatively" (H & M Trading Co. LLC v. Jordache Ltd., 49 Misc 3d 1213(A) [Sup Ct NY County 2015] [citing Yudell v. Gilbert, 99 AD3d 108 [1st Dep't 2012]). Moreover, an LLC member "has no individual cause of action" against a person or entity that purportedly injured that LLC member's entity (id. citing Serino v. Lipper, 123 AD3d 34, 39 [1st Dep't 2012]).
To distinguish a derivative claim from a direct one, the First Department has adopted the Tooley test, under which a court must consider: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders individually)" (H & M Trading Co. LLC v. Jordache Ltd., 49 Misc 3d 1213(A) [Sup Ct NY County 2015] citing Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A2d 1031, 1039 [Del 2004]). Defendants argue that, here, plaintiffs' causes of action allege injuries to MCSDF and plaintiffs collectively, and not exclusively to the individual plaintiffs, thus violating the Tooley test for a direct claim.
On this point, defendants are mistaken. At the heart of plaintiffs' fraud claim, for example, are the allegations that plaintiffs were "induced by fraudulent misrepresentations and omissions provided by Defendants for inclusion in the offering materials, specifically the OM, to invest in MCSDF and then in the Project" (Complaint at 109), and that if "the Plaintiffs [had] known of the true structure of the investment, they either would never have invested in this Project or would have insisted on substantial changes to the structure in order to protect themselves as junior unsecured creditors in an otherwise abusive situation (id. at 118).
Plaintiffs' claims go to allegedly fraudulent misrepresentations and omissions made by defendants without which plaintiffs would not have invested in the project. As such, defendants' attempt to characterize plaintiffs' claims as derivative fail. "[C]ourts have consistently held that a shareholder . . . has standing to sue on its own behalf where it claims that it was fraudulently induced to become a shareholder in the first place" (Solutia Inc. v. FMC Corp., 385 F Supp 2d 324, 333 [SDNY 2005]). The First Department has specifically found that claims that a defendant committed fraud to induce investment by misrepresenting and concealing the true nature of the investment are "properly brought as a direct claim, as the plaintiffs individually suffered the alleged harm and would benefit from any recovery" (SFR Holdings Ltd. v. Rice, 17 NYS3d 398, 399 [1st Dep't 2015]). Therefore, defendants cannot dismiss plaintiffs' claims generally on the sweeping basis that plaintiffs' claims are derivative.
2. Have plaintiffs stated a cause of action for fraud? 
Defendants further argue that even if plaintiffs' claims can be deemed direct claims, plaintiffs' claim for fraud must still be dismissed for failure to plead a substantive element. Defendants argue that dismissal of the fraud claim is warranted given plaintiffs' failure to allege any statements made directly by defendants to plaintiffs.
Defendants are correct. As a threshold matter, in New York, the elements of a fraud, which must be pled with particularity (CPLR 3016(b)), "consist of a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (Pasternack v. Lab. Corp. of Am. Holdings, 27 NY3d 817, 827 [2016]).
Here, plaintiffs' list of misrepresentations and omissions can be grouped in two [*5]categories: statements and alleged mischaracterizations regarding the nature of plaintiffs' investments as outlined in the OM; and omissions and statements echoing such mischaracterizations as outlined in the OA, which were later allegedly incorporated in the OM. Critically, the OM, which was a document used to solicit plaintiffs' investment in MCSDF, was drafted, approved, and distributed exclusively by MCSDF. Plaintiffs do not allege that any of the defendants had any direct involvement with the process of drafting, approving or distributing the OM. In fact, the OM includes the following clarifying statement: "THIS [OM] IS NOT AN OFFERING OF THE WITKOFF GROUP, THE IAN SCHRAGER COMPANY . . . 215 CHRYSTIE VENTURE LLC, 215 CHRYSTIE INVESTORS LLC, 215 CHRYSTIE MEZZ LLC, 215 CHRYSTIE LLC, OR ANY OF THEIR RESPECTIVE AFFILIATES" (OM at pg. v. [all caps in original]). If there is any question as to the falsity or misleading nature of MCSDF's OM, the consequent claims lie only against MCSDF, and its principals, none of whom are defendants here.
Alternatively, to the extent that 215 Venture allegedly provided false information to MCSDF regarding the OA — and to the extent that MCSDF included such information in the OM — such claims belong to MCSDF, not plaintiffs. And although defendants certainly had a hand in drafting the OA, unlike the OM, the OA is an arms-length agreement between 215 Venture and MCSDF. Plaintiffs do not allege that the OA contains any representations intended to be relied upon by third parties. The OA simply sets out the governance of 215 Investors, including the rights and obligations of each member. And nowhere in the complaint do the plaintiffs allege that they are members in 215 Investors. It follows that the OA cannot possibly form the basis of fraud-related claims between plaintiffs — non-parties thereto — and any of the defendants. Thus, because plaintiffs' fail to identify, as they must, any statements in the OM or the OA that defendants made directly to plaintiffs, plaintiffs' fraud claim is dismissed (see Atl. Bank of NY v. Sutton Assocs., Inc., 36 AD2d 943, 944 [1st Dep't 1971] [finding that fraud claims may only be maintained by the party to whom alleged misrepresentations were directly made]; see also Srob v. Raymount Realty, Inc., 34 AD2d 1002, 1002-03 [2nd Dep't 1970] [same]).
3. Have plaintiffs stated a cause of action for negligent misrepresentation?
As an alternative to their fraud claim, plaintiffs allege that, at a minimum, defendants' statements in the OM and OA constitute negligent misrepresentation. To state a claim for negligent misrepresentation under New York law, the plaintiff must prove that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment" (Hydro Inv'rs, Inc. v. Trafalgar Power Inc., 227 F3d 8, 20 [2d Cir 2000]).
Here, plaintiffs' negligent misrepresentation claim suffers from the same defects as plaintiffs' claim for fraud. The basis for plaintiffs' claim is exclusively rooted in statements allegedly made by defendants in the OM and OA, which are the exact same statements that formed the basis for plaintiffs' fraud claim. As analyzed above, no statement in either of the two documents was ever made by defendants directly to plaintiffs. To the extent that the OM or OA contain any misrepresentations — whether fraudulent or negligent — those misrepresentations [*6]were made either by defendants to MCSDF or by MCSDF to plaintiffs. Hence, because plaintiffs' negligent misrepresentation claim does not allege any statements other than those recited in the OM and OA — none of which were made directly by defendants to plaintiffs — plaintiffs' negligent misrepresentation claim fails and is therefore dismissed.
4. Have plaintiffs stated a cause of action for breach of fiduciary duty?
Plaintiffs further assert that defendants, as promoters of investments in the project, owed each plaintiff a fiduciary duty of good faith, loyalty, and full and fair disclosure of all material facts and information relevant to the investment decision presented to plaintiffs. Defendants allegedly breached their respective duties by concealing and failing to disclose the true structure of plaintiffs' investment. Plaintiffs argue that defendants also breached their fiduciary duties by failing to disclose defendants' intentions concerning their own investment of capital and their intention to eliminate their exposure to the risk by taking their capital out through excessive and unwarranted distributions.
Ignoring plaintiffs' assertion that defendants acted as promoters of the project, defendants seek to dismiss plaintiffs' fiduciary duty cause of action on the basis that plaintiffs' indirect investment in 215 Investors, by virtue of plaintiffs' direct investment in MCSDF, is so remote that it cannot create the necessary link between the parties to justify an imposition of fiduciary duty on defendants in relation to plaintiffs. To support this argument, defendants cite to the string of cases standing for the proposition that managing members of an LLC do not owe any fiduciary duty to persons or entities that are not members of the LLC (see Stang LLC v. Hudson Square Hotel, LLC, 158 AD3d 446, 446-47 [1st Dep't 2018]; see also MFB Realty LLC v. Eichner, 161 AD3d 661, 662 [1st Dep't 2018]). This is true even where the person claiming the fiduciary relationship is himself a member of an LLC, which is in turn a member of the LLC in question (see Stang LLC v. Hudson Square Hotel, LLC, 2017 WL 2482951 [Sup Ct NY County 2017], at *1 [dismissing a breach of fiduciary duty claim by an individual that was not himself a member of the LLC in question, even though he was the sole owner on a separate LLC that was a member of the LLC in question]). Thus, defendants take the position that plaintiffs' fiduciary duty claim must be dismissed since plaintiffs' only allegation of fiduciary duty involves plaintiffs' indirect investment in 215 Investors, of which they are not members.
Defendants are mistaken regarding the basis asserted for the fiduciary duty. Plaintiffs are not claiming that defendants owed them a fiduciary duty because plaintiffs' direct investment in MCSDF eventually turned into an indirect investment in 215 Investors, creating a link between plaintiffs and 215 Investors. Rather, plaintiffs allege that defendants acted as promoters for plaintiffs' original investment in MCSDF and that their role as promoters justifies the finding of a fiduciary duty.
As a general matter, "[a] fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. Put differently, a fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other" (Roni LLC v Arfa, 18 NY3d 846, 848 [2011]). Ascertaining the existence of a fiduciary relationship "inevitably requires a fact-specific inquiry" (id.). Thus, the determination of the existence of a fiduciary duty is not properly decided on a motion to dismiss and instead the court must determine if one has been alleged, not whether it can be proven at this point (see EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]).
More specifically, on the issue of promoters' fiduciary duty, the Court of Appeals has held that where there are allegations that defendants planned the business venture, solicited investments and exercised control over the invested funds, the promoters have a duty "to disclose material facts to investors," since the promoters "can reveal those facts more efficiently than individual investors, who would otherwise incur expense investigating what the promoters already know" (Roni, 18 NY3d at 848-49). In affirming the denial of motion to dismiss on the basis that plaintiffs alleged sufficient facts that could support the finding of promoters' fiduciary duty, the Court of Appeals focused on the fact that the complaint alleged that the promoter defendants solicited plaintiffs' investments and have "represented to the foreign investors that they had "particular experience and expertise" in the New York real estate market (id.). And although the promoter defendants described plaintiffs as "sophisticated prospective investors," the Court of Appeals concluded that the complaint painted a different picture, stating that plaintiffs were "overseas investors who had little or limited knowledge of New York real estate or United States laws," thereby further supporting the possibility of establishing promoters' duties and corresponding liabilities (id.).
As in Roni, plaintiffs here allege that defendants acted as promoters for plaintiffs' investment in MCSDF. Indeed, plaintiffs assert that defendants repeatedly solicited plaintiffs' investment in the project — by communicating with plaintiffs in ways other than just through the OM and OA — which, as explained above, cannot properly be seen as evidence of solicitation or direct communication between the parties in this action. Plaintiffs allege that defendants were the ultimate recipients of plaintiffs' invested funds, that they controlled those funds once they were invested in the project, and that defendants represented themselves as having particular and specialized experience with the New York real estate market. The complaint also alleges that plaintiffs have little or no knowledge of New York real estate market, and that they have little or no proficiency in the English language, and that, as a result of these factors, defendants were able to, and did, encourage plaintiffs, beyond communicating through the OM alone, to repose trust and confidence in defendants by dint of their special expertise. Given these allegations, and in light of the caution that determination of the existence of a fiduciary duty not be decided on a motion to dismiss (and that the court must only determine if the existence of fiduciary duty has been alleged, not whether it can be ultimately proven), this court concludes that plaintiffs' claim for breach of promoters' fiduciary duty survives defendants' motion to dismiss (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005] ["In the context of a motion to dismiss pursuant to CPLR 3211, the court must afford the pleadings a liberal construction, take the allegations of the complaint as true and provide plaintiff the benefit of every possible inference. Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss. Applying this standard, we conclude that plaintiff's allegations of breach of fiduciary duty survive Goldman Sachs' motion to dismiss]).
5. Have plaintiffs stated a cause of action for unjust enrichment?
Plaintiffs allege that defendants were charged with the operation of the business of the project in which plaintiffs' money was ultimately invested, and that they removed without authorization not less than $109 million, for their own benefit and use, and thus were unjustly enriched. Defendants argue that plaintiffs do not have the right to assert a claim for unjust enrichment related to defendants' alleged misuse of plaintiffs' funds because such claims are [*7]"specifically governed by the OA," and as such reserved for parties to that agreement — that is MCSDF and defendants. Defendants also argue that plaintiffs' unjust enrichment claims are duplicative of their fraud and negligent misrepresentation claims.
It is well established that to successfully plead unjust enrichment a plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered (Metro. Bank & Tr. Co. v Lopez, 137 NY3d 319, 321 [1st Dept' 2020] [internal citations and punctuation omitted]). Here, plaintiffs allege that defendants were fiduciaries to them by virtue of being promoters of plaintiffs' investment in the project, and that defendants used their position to induce plaintiffs' investment, knowing that plaintiffs' invested money would be paid over to defendants from MCSDF, and that defendants then proceeded to allegedly loot that money. At this juncture, where the court must extend to plaintiffs the benefit of every favorable inference, such allegations are sufficient to survive defendants' attempt to dismiss plaintiffs' unjust enrichment claim.
Defendants' argument that the unjust enrichment cause of action duplicates the now-disposed causes of action for fraud and negligent misrepresentation is unavailing. Plaintiffs' unjust enrichment cause of action suffers from none of the defects present in the rejected causes of action, and may, if proven, provide an independent factual basis to recover from one or more of defendants.
6. Have plaintiffs stated a cause of action for accounting and constructive trust?
Plaintiffs also assert causes of action for accounting and constructive trust. In New York, a claim for an accounting must be predicated upon a special or fiduciary relationship exiting between the parties (Royal Warwick S.A. v. Hotel Representative, Inc., 106 AD3d 451, 452 [1st Dep't 2013]). Similarly, a party's claim for a constructive trust will be dismissed at the pleading stage unless the complaint properly pleads a special or fiduciary relationship (Evans v. Rosen, 111 AD3d 459, 459 [1st Dep't 2013], citing Sharp v. Kosmalski, 40 NY3d 119, 121 [1976]).
Defendants advance the same argument in attempting to dismiss both of these claims, arguing that plaintiffs have not properly pled a recognized fiduciary relationship between plaintiffs and defendants. As analyzed above, this court is satisfied that, at this juncture, plaintiffs have alleged sufficient facts to find that plaintiffs owed a fiduciary duty to defendants in their capacity as promoters for plaintiffs' investment in MCSDF. Therefore, plaintiffs' claims for accounting and constructive trust survive defendants' motion to dismiss, as defendants' only argument for why plaintiffs' claims should be dismissed has already been rejected by this court.

CONCLUSION
Accordingly, it is
ORDERED that the motion of defendants 215 Chrystie Venture, LLC, 215 Chrystie Investors, LLC, The Ian Schrager Company, and the Witkoff Group, LLC (motion sequence number 001) to dismiss the complaint is granted in part and denied in part, as follows: the motion to dismiss is granted in part, to the extent of dismissing the complaint's causes of action for fraud and negligent misrepresentation as against all defendants; and the motion to dismiss is denied in part, to the extent that plaintiffs have alleged sufficient facts to survive dismissal of its claims related to causes of action for breach of fiduciary duty, unjust enrichment, accounting, and constructive trust as against all defendants; and it is therefore
ORDERED that the first cause of action (fraud) and the second cause of action (negligent misrepresentation) are hereby DISMISSED; and it is further
ORDERED that an answer, if not previously filed herein, shall be e-filed on or before August 14, 2023.
July 13, 2023
Robert R. Reed, J.S.C.

Footnotes

Footnote 1:See 8 CFR § 204.6 - Petitions for employment creation immigrants.