*110 OPINION OF THE COURT
Moskowitz, J.
This appeal, from the grant of a motion to dismiss the complaint, requires us to analyze the difference between direct and derivative claims. New York has lacked a clear approach for determining this difference. Instead, our jurisprudence consists of case by case analyses, that are sometimes difficult to apply to new fact patterns. Therefore, in this case, we adopt the test the Supreme Court of Delaware developed in Tooley v Donaldson, Lufkin & Jenrette, Inc. (845 A2d 1031, 1039 [Del 2004]). The Tooley test is consistent with New York law and has the added advantage of providing a clear and simple framework to determine whether a claim is direct or derivative.
At issue on this appeal are claims by trustees of one member of a joint venture against: (1) the managing agent of the joint venture’s sole asset, a shopping center in Long Island, (2) the other members of the joint venture and (3) the joint venture as a nominal defendant.
In 1965, plaintiff Martin D. Yudell, Julius Yudell,* Joseph J. Weiser, and I. Roy Psaty formed Baldwin Harbor Associates (BHA). Each of the Yudells had a one-sixth interest, while Weiser and Psaty each had a one-third interest. Martin and Julius’s interests were later reconfigured so that the Yudell Trust had a one-third interest in the joint venture. Julius Yudell, Joseph Weiser and I. Roy Psaty are deceased.
The purpose of the joint venture was to construct and manage a shopping center. Pursuant to a 1991 management agreement, BHA hired defendant Jerrold Gilbert as the managing agent for the shopping center. Prior to that time, Gilbert had no legal connection to the joint venture. Subsequently, Gilbert became one of two trustees of the Psaty Trust, the successor venture partner to I. Roy Psaty. One of the beneficiaries of the Psaty Trust is Gilbert’s wife. Gilbert’s compensation as the managing agent is 3% of the gross rentals of the shopping center. His responsibilities as manager include billing and collecting rents and providing for maintenance and repair of the premises.
In 2008, plaintiffs brought this action against Gilbert individually, the other members of the joint venture and BHA as a nominal defendant. The complaint purported to bring both derivative and direct claims and pleaded demand futility as follows:
*111 “Plaintiff Yudell Trust is bringing this action in both its individual capacity, and as a derivative action on behalf of BHA [i.e., the joint venture Baldwin Harbor Associates]. In view of the acts, practices and courses of conduct on the part of the defendants as alleged herein, a demand upon the joint venture partners of BHA to take action against the individual defendants would be futile.”
The complaint alleged, on information and belief, that Gilbert had “failed to timely, and in a regular manner, bill for and collect appropriate additional rents and charges at the Shopping Center, including but not limited to real estate tax escalation reimbursement (the ‘Tax Obligations’), and common area maintenance (‘CAM’) charges, all required by the terms of the leases.” The complaint specified:
“(a) upon information and belief, Waldbaum’s, Inc. . . . accrued a total of approximately $1,200,000 in unpaid Tax Obligations owed to BHA during the period of 1991 through 2007 and has also accrued a total of approximately $375,000 in unpaid CAM charges owed to BHA during the period of 1991 through 2007;
“(b) upon information and belief, CVS/Caremark Corporation (‘CVS’) has accrued a total of approximately $340,000 in unpaid Tax Obligations owed to BHA during the period of 2001 through 2007;
“(c) with the approval of [the Weiser and Psaty defendants], and over the objection of the Plaintiff, Gilbert has unilaterally granted . . . purportedly ‘temporary’ rent concessions to various tenants,. . . which have continued for years and have significantly reduced the revenues of the Shopping Center;
“(d) during the past 17 years, Gilbert . . . failed to preserve the legal claims of BHA against Waldbaum’s and CVS and other tenants for unpaid Tax Obligations, CAM and rent more than six (6) years old . . . ;
“(f) Upon information and belief, Gilbert has hired third party real estate brokers to obtain tenants for the Shopping Center for compensation without hav *112 ing entered into written agreements with such brokers, and without having obtained the required unanimous consent of the Venture Partners.”
The complaint further alleged:
“Upon information and belief, Gilbert’s failure to collect the Tax Obligations and CAM . . . and preserve the BHA legal claims against Waldbaum’s . . . had the effect of . . . vesting Waldbaum’s with superior bargaining power in the . . . negotiation ... in November 2007 for a 20 year . . . lease extension and expansion of its space in the Shopping Center . . . This superior bargaining power . . . resulted in Waldbaum’s obtaining an under-market rent from BHA for the next 20-years . . . .”
The complaint also alleged that Gilbert had failed “to properly repair, upgrade and maintain the Shopping Center facilities during [the past 17] years . . . The deterioration of the Shopping Center has resulted in BHA’s inability to obtain rents anywhere near the average market level for such a shopping center in its territory.”
The complaint additionally alleged, “Since in or about April 2002, Gilbert. . . has continually failed to send to the Plaintiffs, on a regular basis and in a timely manner, the monthly operating statements with respect to the Shopping Center, and other material documents.” For example, Gilbert allegedly “failed and/or refused to provide the Plaintiffs . . . with the revised year-end compilations for 2005 and 2006, the bank lease extension documentation, and monthly statements for August, September and December 2006, and October 2007.” However, an exhibit to the complaint included the October 2007 monthly recap for the shopping center.
The first cause of action alleged that Gilbert had “squandered, mismanaged and wasted joint venture partnership funds and property, causing the joint venture partnership to suffer great loss.” It also alleged that Gilbert had “failed properly to account to the joint venture partners.” It sought damages in an “amount determined by an independent accounting.”
The second cause of action alleged that Gilbert had breached the management agreement. It sought damages in an “amount determined by an independent accounting.”
The third cause of action alleged that Gilbert, Weiser, and the Psaty defendants “owed a fiduciary duty to BHA and each of *113 the joint venture partners” that they allegedly breached, causing “injury and damages to the Plaintiffs, including all additional, incidental and consequential amounts as shall be determined prior to trial” and sought damages “in an amount determined by the court.” The alleged breach of fiduciary duty the Weiser and Psaty defendants committed was “their de facto alliance with Gilbert in support of [Gilbert’s] exclusive management and control of virtually every BHA transaction during the past 17 years, and Gilbert’s opposition to the exercise of the partnership rights of the Yudell Trust.”
The fourth cause of action was against Gilbert for negligence. The sixth cause of action alleged that Gilbert breached the joint venture agreement. It specified, “Gilbert’s unauthorized hiring of third party real estate brokers . . . without written agreements, has placed BHA in risk of being subject to claims from the third party real estate brokers for excessive commissions and expenses which are not limited by written agreements.” Plaintiffs did not oppose dismissal of the fifth cause of action and did not appeal from the dismissal of the seventh cause of action.
Defendants answered and moved to dismiss the complaint. The Psaty defendants also moved to amend their answer to add the defenses of documentary evidence, release, and lack of a necessary party because plaintiffs had not effectuated service upon BHA, the joint venture.
The motion court determined that the first six causes of action were derivative in nature and granted defendants’ motions to dismiss these causes of action for failure to plead demand futility with the requisite particularity (Yudell v Gilbert, 2010 NY Slip Op 33779[U] [2010]). On appeal, plaintiffs contend this was error because, according to plaintiffs, not every aspect of causes of action one through six was derivative in nature. In particular, plaintiffs contend the third cause of action for breach of fiduciary duty was a direct claim.
A plaintiff asserting a derivative claim seeks to recover for injury to the business entity. A plaintiff asserting a direct claim seeks redress for injury to him or herself individually. Sometimes whether the nature of the claim is direct or derivative is not readily apparent. New York does not have a clearly articulated test, but approaches the issue on a case by case basis depending on the nature of the allegations. For instance, where shareholders suffer solely through depreciation in the value of their stock, the claim is derivative (Lewin v Lipper Convertibles, 756 F Supp *114 2d 432, 441 [SD NY 2010]), even if the diminution in value derives from a breach of fiduciary duty (Hahn v Stewart, 5 AD3d 285, 286 [2004]). Allegations of mismanagement or diversion of corporate assets also plead a wrong to the corporation (see Abrams v Donati, 66 NY2d 951, 952 [1985]; Albany-Plattsburgh United Corp. v Bell, 307 AD2d 416, 419 [2003], lv dismissed and denied 1 NY3d 620 [2004]), as is a diversion of a corporate opportunity (see Glenn v Hoteltron Sys., 74 NY2d 386, 393 [1989]).
Delaware law, however, provides a framework to determine whether a claim is direct or derivative:
“[a] court should look to the nature of the wrong and to whom the relief should go. The stockholder’s claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation” (Tooley v Donaldson, Lufkin & Jenrette, Inc., 845 A2d 1031, 1039 [Del 2004]).
Thus, under Tooley, a court should consider “(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)” (id. at 1033).
Applying this common sense approach, plaintiffs’ claim for breach of fiduciary duty is derivative, because any pecuniary loss plaintiffs suffered derives from a breach of duty and harm to the business entity, BHA.. Plaintiffs’ allegations of breach of fiduciary duty involve failure to collect rent, back taxes and common charges that tenants would have owed to BHA. Paragraph 17 of the complaint highlights the derivative nature of plaintiffs’ claims when it refers to: “Gilbert’s failure to preserve BHA’s rights to collect the unpaid tax obligations, CAM and rent . . . .” It is only through loss to BHA that plaintiffs suffer a loss at all. Although plaintiffs may own a minority interest in the joint venture, all members suffer losses from the failure to collect rents and other obligations owed the joint venture. Moreover, Tooley suggests that we consider looking at who would receive the benefit of any recovery or other remedy, the joint venture or the members individually. Accordingly, here, any recovery would represent the value of lost rent, CAM charges and the like that inure to the benefit of the joint *115 venture. Only if and when the joint venture receives this compensation would plaintiffs then be entitled to receive their proportionate share. Thus, plaintiffs’ claims are derivative.
But, even if some of plaintiffs’ claims were direct, “[a] complaint the allegations of which confuse a shareholder’s derivative and individual rights will ... be dismissed” (Abrams v Donati, 66 NY2d 951, 953 [1985]). To the extent, if any, that plaintiffs have asserted direct claims, they are embedded in an otherwise derivative claim for partnership waste and mismanagement. Accordingly, the motion court correctly determined that plaintiffs’ causes of action are derivative and properly dismissed them because the complaint fails to plead demand futility with the requisite particularity (see e.g. Bansbach v Zinn, 1 NY3d 1, 8-9, 11 [2003]; Marx v Akers, 88 NY2d 189, 198, 200-202 [1996]). None of the grounds for excusing demand appear in the complaint. The complaint fails to allege that any of the defendants had some self-interest in the transactions, or in Gilbert’s alleged neglect. The complaint does not allege that defendants “failed to inform themselves to a degree reasonably necessary about the [challenged] transaction^] ” (Marx, 88 NY2d at 198). Nor does the complaint allege that the challenged transactions were so egregious on their face that they could not have been products of sound business judgment.
Because the dismissal below was not with prejudice (cf. Tico, Inc. v Borrok, 57 AD3d 302 [2008]), it is not necessary for us to reach plaintiffs’ argument on appeal that they should be allowed to amend their complaint.
Accordingly, the appeal from the order of the Supreme Court, New York County (Bernard J. Fried, J.), entered May 3, 2010, that, insofar as appealed from as limited by the briefs, granted the motions of defendants Jerrold Gilbert (individually), Susan W Finley, Wendy W. Chayet, and Stanley Weiser, as trustees of the Weiser Family Trust, and Jerrold Gilbert and Jerrold Morgulas, as trustees of the Irene Psaty Trust, to dismiss the first, second, third, fourth, and sixth causes of action of the complaint, should be deemed an appeal from the judgment, same court and Justice, entered August 30, 2010, dismissing the complaint, and, as so considered, said judgment should be affirmed, with costs.
Tom, J.E, Friedman, Sweeny and DeGrasse, JJ., concur.
Appeal from order, Supreme Court, New York County, entered May 3, 2010, deemed an appeal from a judgment, same court *116 and Justice, entered August 30, 2010, and as so considered, affirmed, with costs.

 One set of plaintiffs is Martin D. Yudell and Donald M. Spanton as trustees of the Julius Yudell Trust.