**Mandour v Rafalsky**

2024 NY Slip Op 31086(U)

April 1, 2024

Supreme Court, New York County

Docket Number: Index No. 651819/2022

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

------------------------------------------------------------------------------------X

| | |
|---|---|
| NARIMAN M. MANDOUR, AS BOTH BENEFICIARY AND TRUSTEE OF NARIMAN'S TRUST, TOGETHER WITH MARTIN WM. GOLDMAN AND HARVEY I. KRASNER AS TRUSTEES OF NARIMAN'S TRUST, ON BEHALF OF NARIMAN'S TRUST INDIVIDUALLY, and DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP., | **INDEX NO.**    651819/2022 <br><br> **MOTION DATE**    N/A <br><br> **MOTION SEQ. NO.**    002 003 |

Plaintiffs,

- v -

**DECISION + ORDER ON MOTION**

THOMAS RAFALSKY, WOOD, RAFALSKY & WOOD LLP,
TRRKY, INC, FREDRICK STEIN, RICHARD STEIN,
CHARLES J SCHLESINGER, and 10/3 REALTY CORP.,

Defendants.

------------------------------------------------------------------------------------X

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 41, 42, 43, 44, 50, 53, 54, 56, 81

were read on this motion to/for             DISMISSAL           .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 45, 46, 47, 48, 49, 51, 55, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 71, 73, 74

were read on this motion to/for             DISMISS             .

Plaintiffs Nariman M. Mandour, as both beneficiary and trustee of Nariman's Trust, together with Martin Wm. Goldman and Harvey I. Krasner as trustees of Nariman's Trust, on behalf of Nariman's Trust individually, and derivatively on behalf of 10/3 Realty Corp. (RC) initiated this action on April 22, 2022 to invalidate agreements related to the 2014 development of 47 Third Avenue in New York City.

**651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No.  002 003**

**Page 1 of 27**

1 of 27

In motion sequence no. 002, defendants Fredrick Stein (Fredrick),[1] Richard Stein (Richard), and Charles J. Schlesinger (collectively, the Director Defendants) move, pursuant to CPLR 3211 (a) (1), (7) and (8), to dismiss the complaint.

In motion sequence no. 003, defendants Thomas Rafalsky, Esq. and TRRKY, Inc. (TRRKY) (together, the Rafalsky Defendants) move, pursuant to CPLR 3211 (a) (1) and (5), to dismiss the complaint.

**Background**

The following facts are drawn from the first amended complaint (FAC) unless otherwise noted and are assumed to be true for purposes of these motions. (*See CBS, Inc. v Ziff-Davis Publ. Co.*, 75 NY2d 496, 499 [1990].)

Nariman's Trust (the Trust) was established under the last will and testament of decedent Peter Stein (Peter) for the lifetime benefit of Mandour, his spouse. (NYSCEF Doc No. [NYSCEF] 26, FAC ¶ 1; *see* NYSCEF 27, Last Will and Testament at § 1 [E] [1].) Mandour, Goldman, and Krasner serve as trustees. (NYSCEF 26, FAC ¶ 2.) During his lifetime, Peter owned 10 shares, or one-third of all shares, in nominal defendant RC, a New York corporation, and served as its president. (*Id.* ¶¶ 1, 14, 27.) Schlesinger, Peter's uncle, owns 10 shares in RC. (*Id.* ¶¶ 5, 28.) Peter's brothers, Fredrick and Richard each own 5 shares, or one-sixth of the shares in RC. (*Id.* ¶¶ 6-7, 28.) In January 2019, Peter fell ill and he passed away on September 4, 2020. (*Id.* ¶¶ 5, 27.) Peter's shares in RC passed to the Trust under Peter's will. (*Id.* ¶ 1.)

---

[1] The court respectfully refers to family members by their first names to avoid confusion between parties sharing the same surname. Otherwise, individuals are referred to by their surnames.

**651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3**                **Page 2 of 27**
**REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No.  002 003**

2 of 27

RC is the former fee owner of a property located at 47 Third Avenue, New York, New York (the Property). (*Id.* ¶ 22.) In 2004, Peter, together with nonparty Atkins & Breskin, LLC (Atkins) and others, sought to develop the Property[2] into a new, mixed-use building. (*Id.* ¶ 23.) Pursuant to a September 2004 Capital Contribution Agreement signed by Peter on behalf of RC, RC assigned its right, title and interest in the Property to nonparty 47 Third Venture, LLC, an entity in which RC and nonparty 47 Neon, LLC (47 Neon), Atkins' entity, were members. (*Id.* ¶ 24; NYSCEF 28, Capital Contribution Agreement ¶¶ 2.1, 4.1 [A].) Atkins, through 47 Neon, managed and directed the development, which was completed in 2014. (NYSCEF 26, FAC ¶¶ 24-25.) In return for its contribution, RC received title to a commercial condominium unit (the Unit) located at the Property. (*Id.* ¶ 26.) The Unit is owned by Tenth Street Family Holdings, LLC (TSFH), of which RC is the sole member. (*Id.* ¶¶ 4, 26.)

Rafalsky is an attorney who, individually or through his law firm Wood, Rafalsky & Wood LLP (WRW), has represented RC and/or TSFH. (*Id.* ¶¶ 8-9.) Rafalsky owns and/or operates TRRKY, a New York corporation. (*Id.* ¶ 8.) Rafalsky served as RC's attorney on the Capital Contribution Agreement. (NYSCEF 28, Capital Contribution Agreement ¶ 11.6 [B].)

A. The Shareholders Agreement

During the late stages of Peter's illness, Fredrick, Richard and Rafalsky presented him with a shareholders' agreement (the Shareholders Agreement) for execution. (*See* NYSEF 26, FAC ¶ 30.) Nonparty Harter Secrest & Emery LLP (HSE)

---

[2] The Property at that time consisted of three contiguous brownstones. (NYSCEF 71, Rafalsky Defendants' MOL at 1; NYSCEF 82, tr at 6:2-4.)

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL Motion No. 002 003**

**Page 3 of 27**

prepared the document at the Director Defendants' and Rafalsky's direction. (*Id.* ¶ 29.) Peter was not given an advance copy of the document and Mandour was not invited to stay for the meeting. (*Id.* ¶ 30.) The Shareholders Agreement effective December 11, 2019 states that the following officers were to be elected: Peter as president, Richard as vice president, and Schlesinger as secretary and treasurer. (NYSCEF 29, Shareholders Agreement ¶ 1 [c].) In addition, Richard, Peter and Schlesinger each agreed to serve on the Board until "he is no longer a [s]hareholder or is unable to serve as a member of the Board by virtue of death, [d]isability . . . or unwillingness to serve," and if any of the three is "no longer on the Board, then each [s]hareholder agrees" to vote for Fredrick "to fill the first such vacancy on the Board." (*Id.* ¶ 1 [b].) In the event Peter was no longer a shareholder or was "unable to serve as [p]resident by virtue of death, [d]isability or unwillingness to serve," the shareholders agreed to "cause the Board to elect Richard . . . as President." (*Id.* ¶ 1 [d].) The agreement also states that RC's management and operations "shall be conducted by the [p]resident" "except as expressly provided by a majority of the members of the Board." (*Id.* ¶ 1 [e].) The terms of the Shareholders Agreement control in the event of conflicts with RC's articles of incorporation or bylaws.[3] (*Id.*) Richard became RC's president on Peter's death, and he and Fredrick have held themselves out as directors of RC. (NYSCEF 26, FAC ¶¶ 14.)

---

[3] Plaintiffs allege that the Shareholders Agreement conflicts with the bylaws with respect to the appointment of directors who, pursuant to the bylaws, must be elected at an annual shareholder meeting and may serve only until the next annual meeting. (*See* NYSCEF 26, FAC ¶¶ 43-44; NYSCEF 30, Bylaws § III [3].)

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL Motion No. 002 003** **Page 4 of 27**

4 of 27

Plaintiffs allege that the Shareholders Agreement is void ab initio because Peter lacked capacity or was not competent and Richard, Fredrick and Rafalsky unduly influenced and coerced him into entering in the agreement.  (*Id.* ¶¶ 31, 33, 37.)  Plaintiffs also allege that the signatures on the Shareholders Agreement "are not the actual signatures of Peter."  (*Id.* ¶ 34.)  Plaintiffs further allege that the Shareholders Agreement improperly grants significant control over RC to Richard and Fredrick and ensures that the future holder of Peter's shares, i.e. the Trust, has no input or control over RC or its operations.  (*Id.* ¶¶ 42, 47.)

Plaintiffs allege that Richard, Fredrick and/or Schlesinger have failed or refused to permit RC to make significant distributions to its shareholders, even though TSFH has collected rental income from the Unit's tenant.  (*Id.* ¶¶ 49, 51.)  TSFH and RC are pass-through entities, and thus any income received by them flows to RC's shareholders.  (*Id.* ¶ 52.)  Richard, Fredrick, and/or Schlesinger, however, allowed RC to accumulate $1.8 million in cash (the Cash Balance) in a low interest-bearing account after taxes on its earnings were paid.  (*Id.* ¶¶ 50, 52.)  Plaintiffs allege that Richard and Fredrick are refusing to permit distributions because they falsely believe that as the remaindermen under the Trust they will be entitled to the unpaid distributions upon Mandour's death.  (*Id.* ¶¶ 54-55.)  By a letter dated December 16, 2021, the Trust demanded that the Director Defendants make a proportionate shareholder distribution totaling $1.5 million on or before December 31.  (NYSCEF 31, December 16, 2021 Demand Letter at 1-2.)  The Director Defendants failed to respond to the demand. (NYSCEF 26, FAC ¶ 56.)

**651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3**
**REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No.  002 003**

**Page 5 of 27**

5 of 27

[* 5]

In addition, the Director Defendants have taken actions allegedly detrimental to RC. RC has paid Fredrick's and Richard's personal expenses, including New Jersey inheritance taxes, which were later characterized as personal, interest free loans, without offering the Trust the opportunity to take similar loans. (*Id.* ¶¶ 16, 53, 149.)

B. The Development Agreement

The Shareholders Agreement states that "[t]he [s]hareholders acknowledge and agree to the obligations of [RC] under that certain Agreement, dated May 21, 2003 by and between [RC] and Thomas Rafalsky" (the Development Agreement). (NYSCEF 29, Shareholders Agreement ¶ 15.) The Development Agreement signed by Peter as RC's president and Rafalsky provides that RC "wishe[d] for Mr. Rafalsky to develop the Property," which included but was not limited to "determining a use for the Property; determining a source of capital for the development of the Property; determining whether partners would be helpful in the development of the Property; obtaining commercial or residential tenants for the Property; or identifying a purchaser for the Property." (*Id.* at 19[4] [Development Agreement ¶ 2].) Rafalsky would not be paid for his services until RC received cash flow from the Property (*id.* [¶ 3]), whereupon RC would pay 10% of the net income it received to Rafalsky; such payments would be made for the entirety of Rafalsky's life. (*Id.* [¶ 5].) Section 4 provides that "[t]his Agreement shall not include the provision of legal services and is not intended to be an agreement between RC and any other entity, including Mr. Rafalsky's law firm, [WRW]. This agreement is intended to be with Mr. Rafalsky, personally, for other than legal services and advice." (*Id.* [¶ 4].)

---

[4] NYSCEF pagination.

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No. 002 003**

**Page 6 of 27**

INDEX NO. 651819/2022
RECEIVED NYSCEF: 04/01/2024

Plaintiffs allege that the Development Agreement is void ab initio, invalid or unenforceable because it constitutes an improper business transaction between RC and Rafalsky, who drafted the agreement and was RC's attorney. (NYSCEF 26, FAC ¶¶ 59, 68, 110, 114.) It is alleged that Rafalsky failed to: advise RC that it should retain independent counsel, disclose his inherent conflict of interest in the transaction, provide RC with an informed consent or a written waiver of the conflict of interest, and advise RC that the agreement required approval from the Board and its shareholders. (*Id.* ¶¶ 59, 64, 99, 111.) Rafalsky, or entities associated with him, has since received more than $1 million and continue to collect payments. (*Id.* ¶¶ 46, 65.)

Alternatively, plaintiffs allege that the agreement has been terminated or that Rafalsky has breached it. (*Id.* ¶ 69.) The "Property" as defined in the Development Agreement "no longer exists as it did as of the date of the Development Agreement" and RC no longer owns the Property. (*Id.* ¶ 70.) "[N]o payments would be due to Rafalsky at any point after RC received the net proceeds from the initial Development . . . after which, the property did not exist and/or was not owned by 10/3." (*Id.* ¶ 71.) Plaintiffs also allege that Rafalsky failed or refused to develop the property, which instead was developed by Atkins. (*Id.* ¶ 76.)

By letter dated February 15, 2022, counsel for the Trust demanded that RC cease making payments to Rafalsky under the Development Agreement; commence an action against Rafalsky for malpractice, unjust enrichment, fraud and a judgment declaring the Development Agreement void ab initio and to recover the amounts RC or TSFH paid to him or TRRKY. (NYSCEF 32, February 15, 2022 Demand Letter at 1-2.) RC rejected the demand. (NYSCEF 26, FAC ¶ 80.)

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No. 002 003**

**Page 7 of 27**

7 of 27

## Procedural History

This action was brought on behalf of the Trust, individually, and derivatively on behalf of RC. (NYSCEF 26, FAC at 1/32.[5]) Plaintiffs allege the following causes of action: (1) a derivative claim against Rafalsky for a judgment declaring the Development Agreement void ab initio; (2) alternatively, a derivative claim against Rafalsky for a judgment declaring the Development Agreement terminated; (3) a derivative claim for unjust enrichment against Rafalsky and TRRKY; (4) a derivative claim for legal malpractice against Rafalsky and WRW[6]; (5) a direct and derivative claim against the Director Defendants declaring the Shareholders Agreement void ab initio; (6) a direct and derivative claim for breach of fiduciary duty against Schlesinger in his capacity as the sole director and officer of RC; (7) alternatively, a direct and derivative claim for breach of fiduciary duty against Fredrick and Richard in their capacity as purported directors of RC; and (8) a direct and derivative claim for breach of fiduciary duty against the Director Defendants in their capacity as controlling shareholders. (*Id.* ¶¶ 84-166).

On March 13, 2023, Schlesinger passed away. (*See* NYSCEF 83, March 28, 2023 Letter.) On February 9, 2024, Sheldene Schlesinger, as Executor of defendant Schlesinger's Estate, was substituted in his place as defendant. (NYSCEF 84, Stipulation.)

## Discussion

"A cause of action may be dismissed under CPLR 3211(a)(1) only where the documentary evidence utterly refutes [the] plaintiff's factual allegations, conclusively

---

[5] NYSCEF pagination.
[6] The action against WRW has been discontinued with prejudice. (NYSCEF 77, October 3, 2022 Order.)

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No. 002 003**

**Page 8 of 27**

establishing a defense as a matter of law." (*Art and Fashion Group Corp. v Cyclops Prod., Inc.*, 120 AD3d 436, 438 [1st Dept 2014] [internal quotation marks and citation omitted].)

A party moving under CPLR 3211 (a) (5) to dismiss an action as time-barred "bears the initial burden of establishing, prima facie, that the time in which to sue has expired." (*Benn v Benn*, 82 AD3d 548, 548 [1st Dept 2011] [internal quotation marks and citation omitted].) "Once that showing has been made, the burden shifts to the plaintiff to raise a question of fact as to whether the statute of limitations has been tolled, an exception to the limitations period is applicable, or the plaintiff actually commenced the action within the applicable limitations period." (*Flintlock Constr. Servs., LLC v Rubin, Fiorella & Friedman, LLP*, 188 AD3d 530, 531 [1st Dept 2020].)

On a CPLR 3211 (a) (7) motion to dismiss, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994] [citation omitted].)

A defendant may move pursuant to CPLR 3211 (a) (8) to dismiss an action for lack of personal jurisdiction. (CPLR 3211 [a] [8].) "While the ultimate burden of proof rests with the party asserting jurisdiction, the plaintiff, in opposition to a motion to dismiss pursuant to CPLR 3211 (a) (8), need only make a prima facie showing that the defendant[s] w[ere] subject to the personal jurisdiction of the Supreme Court" by demonstrating "that facts may exist to exercise personal jurisdiction over the defendant." (*Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC*, 90 AD3d 977, 978 [2d Dept 2011] [internal quotation marks and citations omitted].)

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL Motion No. 002 003**

**Page 9 of 27**

9 of 27

<u>Motion Sequence No. 002 – Director Defendants' Motion to Dismiss</u>

The Director Defendants argue that the court lacks personal jurisdiction over Frederick and Richard. The court agrees that jurisdiction is lacking under CPLR 301,[7] but plaintiff has established jurisdiction under CPLR 302.

CPLR 301 provides for general jurisdiction over an individual domiciled in this state "or in the exceptional case where an individual's contacts with a forum [are] so extensive as to support general jurisdiction notwithstanding domicile elsewhere." (*IMAX Corp. v Essel Group*, 154 AD3d 464, 465-66 [1st Dept 2017] [internal quotation marks and citation omitted].) Here, plaintiffs allege that Fredrick and Richard reside in Virginia and Florida, respectively. (NYSCEF 26, FAC ¶¶ 6-7.) Plaintiffs do not allege that either had extensive contacts with New York such that they are at home here. (*See Xue v Jensen*, 2020 WL 6825676, *6, 2020 US Dist LEXIS 217878, *14-15 [SD NY, Nov. 19, 2020, No. 19-cv-1761 (VSB)] [no personal jurisdiction under CPLR 301 over nonresident who attended meetings in New York and was employed by New York entity].) Thus, there is no basis for general jurisdiction over Fredrick or Richard.

The Director Defendants next argue that the court lacks personal jurisdiction over Frederick and Richard under CPLR 302 (a) (1), (2), or (3). CPLR 302 (a) (1) allows a court to exercise jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." (CPLR 302 [a] [1].) "It is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and

---

[7] Plaintiffs fail to address this argument in their opposition brief. (NYSCEF 53, Memo of Law.)

**651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3**   **Page 10 of 27**
**REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No.  002 003**

[* 10]

there is a substantial relationship between the transaction and the claim asserted." (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988] [citations omitted].) Plaintiff must demonstrate that defendant (i) "conducted sufficient activities to have transacted business in the state" and (ii) "the claims must arise from the transactions." (*Rushaid v Pictet & Cie*, 28 NY3d 316, 323 [2016], *rearg denied* 28 NY3d 1161 [2017].) Regarding the first prong, the defendant must have "purposefully availed itself of the privilege of conducting activities in the state by transacting business in New York." (*D&R Global Selections, S.L. v Bodega Olegario Falcon Pineiro*, 29 NY3d 292, 297-98 [2017] [internal quotation marks and citation omitted].) The quality of defendant's New York contacts is key. (*See Fischbarg v Doucet*, 9 NY3d 375, 380 [2007].) As to the second prong, "the plaintiff's cause of action must have an 'articulable nexus' or 'substantial relationship' with the defendant's transaction of business here." (*D&R Global Selections, S.L.*, 29 NY3d at 298-99 [citation omitted].)

Here, plaintiffs allege (1) the Director Defendants hired HSE, a New York law firm, to draft the Shareholders Agreement[8] for RC, which is a New York corporation (NYSCEF 26, FAC ¶¶ 14, 17), and (2) at least part of that agreement was performed in New York. (*Compare Magdalena v Lins*, 123 AD3d 600, 601 [1st Dept 2014] [CPLR 302 (a) (1) did not confer jurisdiction where parties negotiated and executed agreement outside of New York and no part of agreement was performed or breached in New York].) Specifically, pursuant to the Shareholder Agreement, Richard agreed to serve

---

[8] Even if the Shareholder Agreement was executed in New Jersey, as Fredrick avers (NYSCEF 14, Fredrick aff ¶ 2), the execution of the agreement outside of New York is not dispositive on the issue of jurisdiction. (*See Vacuum Instrument Corp. v EPM Co.*, 8 AD3d 661, 662 [2d Dept 2004].)

651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3
REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL
Motion No.  002 003

Page 11 of 27

11 of 27

on the Board.  (NYSCEF 29, Shareholders Agreement ¶ 1 [b].)  Richard was first to be appointed as vice president of RC, and then as president once Peter is no longer a shareholder or cannot serve as president.  (*Id.* ¶ 1 [c], [d].)  Frederick was "to fill the first vacancy of the Board."  (*Id.* ¶ 1 [b].)  Plaintiffs allege that Fredrick and Richard held themselves out as directors of RC, attended the Board meetings in New York, and, in December 2020, in accordance with the Shareholder Agreement, the Board elected Richard as RC's new president after Peter's passing.  (NYSCEF 26, FAC ¶¶ 6-7, 15; NYSCEF 34, RC May 4, 2021 minutes at 3).  Because Fredrick and Richard were the "primary actors with respect to the transactions at issue" (*Matter of Renren, Inc.*, 192 AD3d 539, 539 [1st Dept 2021]), plaintiffs sufficiently allege that Fredrick and Richard transacted business in New York.  Further, plaintiffs' claims arise from the Shareholders Agreement and Fredrick and Richard's transaction of business as directors and shareholders of RC.  Accordingly, plaintiffs have "made a prima facie showing that defendants are subject to personal jurisdiction under CPLR 302(a)(1)."  (*PC-16 Doe v Hill Regional Career High Sch.*, — AD3d —, 2024 NY App Div LEXIS 243, 2024 NY Slip Op 00225, *1 [1st Dept 2024] [plaintiff made prima facie showing of jurisdiction under CPLR 302 (a) (1) by alleging defendants' purposeful activities in New York and substantial relationship between activities and claims].)

The Director Defendants argue that plaintiffs fail to allege that Frederick and Richard committed torts in New York.  Plaintiffs allege that Fredrick and Richard breached fiduciary duties while acting as directors and controlling shareholders of RC (NYSCEF 26, FAC ¶¶ 142-145, 156-158), and that they attended the Board and shareholder meetings in New York.  (*Id.* ¶ 15.)  At the motion to dismiss stage, these

**651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3**
**REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No.  002 003**

**Page 12 of 27**

12 of 27

allegations are sufficient to infer that Fredrick and Richard were "[physically] presen[t] [in New York] at the time of the tort" (*SOS Capital v Recycling Paper Partners of PA, LLC*, 220 AD3d 25, 33 [1st Dept 2023] [internal quotation marks and citation omitted]), as is required for personal jurisdiction under CPLR 302 (a) (2).

Finally, plaintiffs allege that Fredrick and Richard's tortious conduct injured RC and the Trust, of which plaintiff Mandour, a New York resident, is the beneficiary. Defendants argue that since the breach of fiduciary duty claim is defective, there can be no jurisdiction based on it. While defendants' argument is deficient, as a matter of law, Mandour's residence in New York is not sufficient for jurisdicition. "[I]n the context of a case involving a commercial tort … the residence of the injured party in New York is not sufficient to satisfy the clear statutory requirement of an "injury within the state." (*McGowan v Smith*, 52 NY2d 268, 274-75 [1981].) Therefore, there is no jurisdiction under CPLR 302(a)(3)(i) or (ii).

Next, the Director Defendants challenge the sufficiency of the fifth through eighth causes of action, which are alleged both derivatively on behalf of RC and directly. It is well settled that "[a]n individual shareholder has no right to bring an action in his [or her] own name and in his [or her] own behalf for a wrong committed against the corporation." (*General Motors Acceptance Corp. v Kalkstein*, 101 AD2d 102, 105-106 [1st Dept 1984] [citation omitted], *appeal dismissed* 63 NY2d 676 [1984].) An exception to this rule allows a shareholder to recover in its individual capacity "when the wrongdoer had breached a duty owed to the shareholder independent of any duty owing to the corporation wronged." (*Abrams v Donati*, 66 NY2d 951, 953 [1985] [citations omitted], *rearg denied*, 67 NY2d 758 (1986).) Generally, "[a] plaintiff asserting a derivative claim

**651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No. 002 003**                                                                 **Page 13 of 27**

13 of 27

seeks to recover for injury to the business entity" whereas "[a] plaintiff asserting a direct claim seeks redress for injury to him or herself individually." (*Yudell v Gilbert*, 99 AD3d 108, 113 [1st Dept 2012].) To determine whether a claim is a direct or derivative claim, the "court should consider (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." (*Id.* at 114 [internal quotation marks and citation omitted].)

1. Declaratory Judgment (Fifth Cause of Action)

The Director Defendants argue that plaintiffs fail to state a derivative claim for a judgment declaring the Shareholder Agreement void because the agreement did not harm RC. The court agrees. Although the Shareholders Agreement states that RC was a party (NYSCEF 29, Shareholders Agreement at 1), plaintiffs fail to adequately allege how an order declaring that agreement void inures to RC's benefit. Indeed, the Shareholders Agreement governs the transfer of shares "during each Shareholder's lifetime and . . . provide[s] for the Transfer of Shares upon the occurrence of certain events," (*id.* at 1) such as a shareholder's death, as well the election of officers and directors upon the happening of those events. (*See id.* ¶ 1; *see generally id.*) The only alleged injury stemming from the agreement is to the Trust, which was excluded from having any input or control over RC and its operations as a result of the agreement. (NYSCEF 26, FAC ¶¶ 42, 47.) The Trust individually thus would benefit from a

651819/2022  NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL
Motion No. 002 003

Page 14 of 27

14 of 27

declaration that the agreement is void. Accordingly, the fifth cause of action pleads only an injury to the Trust, individually, and is a direct claim.[9]

2. Breach of Fiduciary Duty (Sixth, Seventh, and Eights Causes of Action)

The sixth, seventh, and eighth claims for breach of fiduciary duty are predicated upon the Director Defendants' failure to pay distributions to RC shareholders and the use of corporate funds to pay for Fredrick's and Richard's expenses, which payments were later recharacterized as interest free, personal loans. (NYSCEF 26, FAC ¶¶ 136, 145, 158).[10]

*Lack of Distribution Payments*

The Director Defendants argue that the allegations that they failed to make distributions cannot support the breach of fiduciary duty claims as a matter of law. The decision to pay distributions "involve[es] . . . matters of business judgment . . . [and] make[s] out a claim of a derivative nature which belongs to the corporation." (*Bender v Ferro*, 86 AD2d 12, 13 [1st Dept 1982] [citation omitted]; *see Maldonado v DiBre*, 140 AD3d 1501, 1504 [3d Dept 2016] [withholding profit distributions is derivative claim], *lv denied* 28 NY3d 908 [2016].) "The business judgment rule bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment

---

[9] The Director Defendants also argue that this cause of action must be dismissed because plaintiffs failed to plead demand futility. Because demand futility need not be pleaded on a direct claim (*see* Business Corporation Law § 626), the court will not address this argument. The court notes that the Director Defendants have not made the argument regarding plaintiffs' failure to plead demand futility with respect to the remaining causes of action.

[10] In the seventh cause of action, plaintiffs allege that Fredrick and Richard did not provide any other shareholders, including the Trust, with the opportunity to take similar interest-free loans, resulting in inequitable treatment of the shareholders. (NYSCEF 26, FAC ¶ 149.) The Director Defendants do not address this allegation in their motion.

651819/2022  NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3   Page 15 of 27
REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL
Motion No.  002 003

[* 15]                                                              15 of 27

in the lawful and legitimate furtherance of corporate purposes." (*Gonzalez v Been*, 145 AD3d 434, 435 [1st Dept 2016] [internal quotation marks and citation omitted].) "The business judgment rule, however, does not foreclose judicial inquiry into the decision of a board of directors where the board acted in bad faith." (*Owen v Hamilton*, 44 AD3d 452, 456 [1st Dept 2007] [citation omitted], *appeal dismissed* 10 NY3d 757 [2008].)

Plaintiffs have not stated direct claims based on the alleged failure to pay distributions because the Director Defendants allegedly declined to distributions to all shareholders of RC. (NYSCEF 26, FAC ¶ 51.)

The alleged failure to pay distributions, however, supports plaintiffs' derivative claims against Fredrick and Richard because plaintiffs allege bad faith on their part, specifically, that Fredrick and Richard refused to permit distributions "due to the false belief that upon the death of Nariman Mandour, the life-time beneficiary of the Trust, any accrued distributions due the Trust from RC will inure to the benefit of [Fredrick and Richard], who are the remainderman under the Trust, rather than to the rightful and lawful lifetime beneficiary of the Trust, Peter's wife, Nariman Mandour." (*Id.* ¶ 54; see *Owen*, 44 AD3d at 456.) As to Schlesinger, though, plaintiffs have not alleged derivative claims based on the alleged failure to pay distributions because there are no allegations that Schlesinger's conduct was in bad faith.

*Interest-Free loans*

The allegations of the payment of interest-free loans to Fredrick and Richard cannot support plaintiffs' direct claims against the Director Defendants in the sixth, seventh, and eighth causes of action because plaintiffs allege no individual injury stemming from the interest-free loans. (*See Yudell*, 99 AD3d at 113.) Indeed,

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL Motion No. 002 003**

**Page 16 of 27**

16 of 27

[* 16]

"allegations of mismanagement or diversion of [corporate] assets by officers or directors to their own enrichment . . . plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually." (*Abrams*, 66 NY2d at 953 [citation omitted].) Accordingly, these causes of action, alleging payment of interest-free loans, are derivative.

"Where a cause of action or defense is based upon . . . breach of trust . . . the circumstances constituting the wrong shall be stated in detail." (CPLR 3016 [b].) Here, the breach of fiduciary duty claims, to the extent they are predicated on the payment of interest-free loans,[11] "clearly inform a defendant with respect to the incidents complained of" and thus are alleged with sufficient particularity. (*Bernstein v Kelso & Co.*, 231 AD2d 314, 320 [1st Dept 1997].) Namely, plaintiffs allege that the Director Defendants directed RC to pay Fredrick and Richard interest-free loans for tens of thousands of dollars to cover their personal expenses, including inheritance taxes. (NYSCEF 26, FAC ¶¶ 136, 145-146, 158, 160.) Plaintiffs also allege that the Trust had no input or control over RC and its operations (*see id.* ¶¶ 42, 47), thus demonstrating that further pertinent facts about these alleged loans are "peculiarly within . . . defendants' knowledge. Thus, the appropriate course of action is to order discovery." (*Miami Firefighters' Relief & Pension Fund v Icahn*, 199 AD3d 524, 526 [1st Dept 2021] [citation omitted].)

Finally, because the seventh and eighth cases of action impermissibly intermingle direct and derivative claims, those causes of action are dismissed with leave

---

[11] The Director Defendants challenge any other aspects of these claims as insufficiently alleged.

**651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No. 002 003**

**Page 17 of 27**

to replead in accordance with the above, should plaintiffs be so advised.  (*See Barbour v Knecht*, 296 AD2d 218, 228 [1st Dept 2002] [citation omitted].)

Motion Sequence No. 003 – Rafalsky Defendants' Motion to Dismiss

1.  Declaratory Judgment (First Cause of Action)

Plaintiffs allege a derivative claim seeking to declare the Development Agreement void ab initio because it is an improper business transaction between an attorney and client.  (NYSCEF 26, FAC ¶¶ 84-93.)  The Rafalsky Defendants argue that this claim must be dismissed as time-barred.  Plaintiffs counter that the statute of limitations does not bar an action that seeks to declare a contract void ab initio.

The CPLR does not prescribe a specific statute of limitations for a declaratory judgment claim.  Ordinarily, the catch-all six-year statute of limitations in CPLR 213 (1) applies unless "the rights of parties sought to be stabilized in a declaratory judgment action are, or have been, open to resolution through a particular procedural route for which a specific limitation period is statutorily provided."  (*Vigilant Ins. Co. of Am. v Housing Auth. of the City of El Paso, Tex.*, 87 NY2d 36, 41 [1995] [citation omitted].)  Therefore, "[c]ourts must look to the underlying claim and the relief sought to determine the applicable period of limitation."  (*Id.* at 40 [internal quotation marks and citation omitted].)

An attorney is not prohibited from contracting with a client on matters unrelated to the provision of legal services.  (*See Greene v Greene*, 56 NY2d 86, 92 [1982] [citation omitted].)  While such contract "is not voidable at the will of the client" (*id.*), the contract "may be invalid if it appears that the attorney 'got the better of the bargain', unless [the attorney] can show that the client was fully aware of the consequences and that there

**651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3**
**REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No.  002 003**

**Page 18 of 27**

18 of 27

[* 18]

was no exploitation of the client's confidence in the attorney." (*Id.* [citation omitted].) Thus, contracts between an attorney and a client for non-legal services are merely voidable, not void ab initio. (*See Matter of Broder (JMARQ Corp.)*, 265 AD2d 218, 219 [1st Dept 1999] [refusing to void contract between client and attorney for matters unrelated to provision of legal services because it would be inequitable to attorney].)

Applying these precepts, the claim underlying the first cause of action appears to be one seeking rescission, since recission of the Development Agreement would "nullify [its] terms" whereas "[a] declaratory judgment action would produce a ruling as to the rights of the parties under the terms of the contract, and essentially would determine the meaning of those terms." (*Princes Point LLC v Muss Dev. L.L.C.*, 30 NY3d 127, 134 [2017] [citation omitted]). A six-year statute of limitations governs a cause of action for rescission. (*Greene*, 56 NY2d at 93.) Here, Rafalsky and RC executed the Development Agreement on or about May 21, 2003, from which date the statute of limitations began to run. As this action has been filed in 2022, the first cause of action is time-barred. (*See Matter of Kassab v Kasab*, 2014 WL 11498024, *3, 2014 NY Misc LEXIS 6449, *7-8 [Sup Ct, Queens County, Mar. 12, 2014, index No. 14428/2013, Kitzes, J.] [dismissing as time-barred claim seeking declaration that agreement signed in 1992 is void ab initio], *affd* 137 AD3d 1135 [2d Dept 2016].)

Alternatively, plaintiffs argue that the limitations period has been tolled until present under the continuous representation doctrine. This doctrine tolls the statute of limitations for claims against an attorney when the plaintiff establishes that there is (1) "a claim of misconduct concerning the manner in which professional services were performed" and (2) an "ongoing provision of professional services with respect to the

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL Motion No. 002 003**

**Page 19 of 27**

19 of 27

[* 19]

contested matter or transaction." (*Matter of Lawrence*, 24 NY3d 320, 341 [2014] [citations omitted], *rearg denied* 24 NY3d 1215 [2015].) Importantly, there must be "a mutual understanding of the need for further representation on the specific subject matter underlying the . . . claim." (*McCoy v Feinman*, 99 NY2d 295, 306 [2002].) Here, plaintiffs fail to raise an issue of fact that the continuous representation doctrine applies.

Rafalsky's services under the Development Agreement were wholly unrelated to the provision of legal services to RC. Instead, Rafalsky was charged with determining a use for the Property, identifying whether partners to develop the Property would be helpful, and the like. Rafalsky's services do not implicate the "'perform[ace of] legal services on the [client's] behalf'" (*Matter of Lawrence*, 24 NY3d at 343, quoting *Greene*, 56 NY2d at 95) and thus the continuous representation doctrine is inapplicable. Indeed, while Rafalsky may have continued to perform legal work on behalf of RC or TSFH, for the continuous representation doctrine to apply, the continuing services "must be in connection with the particular transaction that is the subject of the action . . . and not merely during the continuation of a general professional relationship." (*Zaref v Berk & Michaels*, 192 AD2d 346, 347-48 [1st Dept 1993] [citations omitted]).

The documents submitted with Mandour's affidavit, assuming they are admissible,[12] fail to raise an issue of fact that Rafalsky performed any legal services

---

[12] The court declines to consider, as inadmissible hearsay, parts of Mandour's affidavit recounting Peter's statements to her. (*See U.S. Bank N.A. v Martin*, 144 AD3d 891, 892 [2d Dept 2016] [hearsay evidence is insufficient to raise issue of fact in opposition to motion to dismiss].) The court rejects defendants' objection based on the Deadman's statute because at the motion to dismiss stage, materials that would be precluded at trial under CPLR 4519 "may nevertheless be considered in determining

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3** **Page 20 of 27**
**REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No. 002 003**

[* 20]

20 of 27

pursuant to or in connection with the Development Agreement. (*See* NYSCEF 59, Mandour aff ¶¶12-18 [describing documents].)[13] On their face, these documents relate to the management of the Unit rather than development of the Property. Further, to the extent plaintiffs argue that Rafalsky's services under the Development Agreement overlapped with the legal services he provided to RC on the Capital Contribution Agreement, plaintiffs fail to raise a triable issue that Rafalsky's work on the Capital Contribution Agreement continued beyond 2014, when the development of the Property was completed. (NYSCEF 26, FAC ¶ 25.)

*Schlanger v Flaton*, 218 AD2d 597 [1st Dept 1995], *lv denied* 87 NY2d 812 (1996), cited by plaintiffs, is distinguishable. In *Schlanger*, the attorney advised the client for many years with respect to the client's personal matters and his automobile business. (*See id*. at 597-98.) The attorney entered in a business venture with the client, acquiring interest in two corporations created to hold a lease and option to buy a building. (*See id*. at 598-99.) The client sough to rescind the attorney's interest in the

---

whether a triable issue exists to defeat the motion." (*Josephson v Crane Club, Inc*., 264 AD2d 359, 360 [1st Dept 1999] [internal quote marks and citation omitted])

[13] Namely, plaintiffs proffer (i) a 2006 lease agreement for the Unit, which states that copies of all notices to landlord shall be sent to Rafalsky at WRW, and which was executed between nonparty 47 Third Venture, LLC as landlord and nonparty Commerce Bank, N.A., as tenant (NYSCEF 59, Lease ¶ 27.01); (ii) a September 25, 2014 invoice from WRW to TSFH, revealing that attorneys Curtis A. Wood and Tyesha Murray-Blaizes worked on matters for TSFH Street (*see* NYSCEF 60, WRW invoice at 9); (iii) a September 17, 2020 amendment to a lease for the Unit between TSFH and nonparty TD Bank, N.A., which indicates that notices to TSH be sent to Rafalsky and which is signed by him on behalf of RC, as manager (NYSCEF 61, Lease Amendment ¶ 16; *id*. at 10); (iv) a September 2, 2020 brokerage agreement between nonparty CBRE, Inc. and TSFH, which Rafalsky signed on behalf of RC, as manager (NYSCEF 63, Brokerage Agreement at 2); and (v) emails discussing the brokerage agreement and a letter of credit. (NYSCEF 64-65, emails.)

**651819/2022  NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3
REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL
Motion No.  002 003**

**Page 21 of 27**

21 of 27

[* 21]

corporations (*id.* at 600), and the attorney raised the statute of limitations defense. (*See id.* at 603.) The Appellate Division, First Department held that the statute of limitation was tolled until the attorney ceased providing legal services to the client because "it [was] impossible to separate the services that [the attorney] performed in connection with the subject corporations from those rendered to the automobile business generally." (*Id.* at 603.) Here, however, plaintiffs fail to raise an issue of fact that Rafalsky provided any legal services to RC with respect to the Development Agreement, which is at issue. Accordingly, this claim is dismissed as time-barred.

　　2. Declaratory Judgment (Second Cause of Action)

　　Alternatively, plaintiffs allege a derivative claim for a judgment declaring that the Development Agreement has terminated. Rafalsky Defendants argue that this claim is time-barred.

　　As this claim implicates the parties' contractual obligations, a six-year statute of limitations controls. (CPLR 213 [2].) Plaintiffs allege that Rafalsky failed to perform under the Development Agreement and that Atkins actually developed the Property, which was completed in 2014. (NYSCEF 26, FAC ¶¶ 25, 96.) Plaintiffs also allege that under the agreement "no payments would be due Rafalsky at any point after RC received the net proceeds from the initial Development of the property . . . after which, the property did not exist and/or was not owned by 10/3." (*Id.* ¶ 98). Based on these allegations, RC had until 2020, or six years from the development's completion in 2014, to pursue an action to declare the Development Agreement terminated. As plaintiffs brought this action in April 2022, the second claim is dismissed as time-barred.

**651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3
REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL
Motion No. 002 003**

**Page 22 of 27**

22 of 27

Plaintiffs argue that Peter had no authority to enter into the Development Agreement on RC's behalf because the bylaws require that such an act be authorized by a majority of the shareholders' votes cast. Plaintiffs argue that as a result, the limitations period began to run in 2019, when the Development Agreement was ratified in the Shareholder Agreement. (NYSCEF 29, Shareholder Agreement ¶ 15.) This argument is unavailing as the ratification "presupposes the existence of a contract" and "relates back and supplies original authority to execute the . . . agreement." (*Jayne v Talisman Energy Usa, Inc.*, 84 AD3d 1581, 1583 [3d Dept] [internal quotation marks and citations omitted], *lv denied* 17 NY3d 710 [2011].)

### 3. Unjust Enrichment (Third Cause of Action)

Plaintiffs allege that Rafalsky and TRKKY were unjustly enriched by the payments they collected in connection with the Development Agreement, which is either void or terminated. (NYSCEF 26, FAC ¶¶ 104-105.) Rafalsky Defendants argue that this claim fails because there is a valid contract that covers the current dispute.

A valid agreement governing whether the disputed payments were due and owing precludes the unjust enrichment claim. (*See IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 ["Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded" (citation omitted)], rearg denied, 12 NY2d 889 [2009].) It makes no difference that TRKKY is not a party to the Development Agreement, as it is alleged that TRKKY collected payments in connection with that agreement. (*See Maor v Blu Sand Intl. Inc.*, 143 AD3d 579, 579 [1st Dept 2016] ["the unjust enrichment claim cannot be maintained, since there can be

**651819/2022 NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3 REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL**
**Motion No. 002 003**

**Page 23 of 27**

[* 23]

23 of 27

no quasi-contract claim against a third-party nonsignatory to a contract that covers the subject matter of the claim" (citations omitted)].) Accordingly, the unjust enrichment claim is dismissed.

4. Legal Malpractice (Fourth Cause of Action)

The Rafalsky defendants argue that the legal malpractice claim is time-barred. A three-year statute of limitations governs a cause of action for legal malpractice (CPLR 214 [6]), which begins to "accrue when the malpractice is committed, not when the client learns of it." (*Palmeri v Willkie Farr & Gallagher LLP*, 156 AD3d 564, 567 [1st Dept 2017] [citations omitted].) Where the alleged malpractice claim is predicated upon the attorney's failure to disclose a conflict of interest, the claim accrues from that date. (*See Kvetnaya v Tylo*, 49 AD3d 608, 609 [2d Dept 2008].)

In this case, the predicate acts underlying the malpractice claim occurred prior to May 21, 2003, when the Development Agreement was executed. Plaintiffs commenced this action in April 2022. As discussed *supra*, plaintiffs have failed to raise an issue of fact that the continuous representation doctrine tolled the limitations period. Thus, the legal malpractice claim is dismissed as time-barred.

The court has considered the parties' remaining arguments and finds that they do not affect the outcome.

Accordingly, it is

ORDERED that the motion brought by defendants Fredrick Stein, Richard Stein and Charles J. Schlesinger to dismiss the complaint against them (motion sequence no. 002) is granted, in part, to the extent that (i) the sixth cause of action is predicated on Charles J. Schlesinger's failure or refusal to pay distributions to RC Realty Corp.'s

651819/2022    NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3      Page 24 of 27
REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL
Motion No. 002 003

[* 24]                                                          24 of 27

shareholders and (ii) the seventh and eighth causes of action are dismissed with leave to replead. The motion is otherwise denied; and it is further

ORDERED that the motion brought by defendants Thomas Rafalsky, Esq. and TRRKY, Inc. to dismiss the complaint (motion sequence no. 003) is granted, and the complaint is dismissed in its entirety against said defendants, with costs and disbursements to said defendants as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendants; and it is further

ORDERED that the action is severed against defendants Thomas Rafalsky, Esq. and TRRKY, Inc. and shall continue against the remaining defendants; and it is further

ORDERED that the caption be amended to reflect the dismissal and substitution and that all future papers filed with the court bear the amended caption; and it is further

651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3
REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL
Motion No.  002 003

Page 25 of 27

25 of 27

ORDERED that the amended caption shall read as follows:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:

------------------------------------------------------------------------------x

NARIMAN M. MANDOUR, AS BOTH
BENEFICIARY AND TRUSTEE OF NARIMAN'S
TRUST, TOGETHER WITH MARTIN WM.
GOLDMAN AND HARVEY I. KRASNER AS
TRUSTEES OF NARIMAN'S TRUST, ON BEHALF
OF NARIMAN'S TRUST INDIVIDUALLY, AND
DERIVATIVELY ON BEHALF OF 10/3 REALTY
CORP.,

Index No.
651819/2022

Plaintiffs,

- against -

FREDRICK STEIN, RICHARD STEIN, AND
SHELDENE SCHLESINGER, AS EXECUTOR OF
THE ESTATE OF CHARLES SCHLESINGER,
DECEASED,

Defendants.

10/3 REALTY CORP.,

Nominal Defendant.

------------------------------------------------------------------------------x

; and it is further

ORDERED that counsel for the moving party shall serve a copy of this order with

notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office,

who are directed to mark the court's records to reflect the change in the caption herein;

and it is further

ORDERED that such service upon the Clerk of the Court and the Clerk of the

General Clerk's Office shall be made in accordance with the procedures set forth in the

*Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases*

(accessible at the "E-Filing" page on the court's website); and it is further

651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3
REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL
Motion No. 002 003

Page 26 of 27

26 of 27

ORDERED that the remaining defendants shall file an answer by April 22, 2024 and the parties shall file a proposed PC order by April 26, 2024.  If the parties cannot agree to a schedule, they shall submit competing proposals.

__4/1/2024__
**DATE**

2024040148134OAMASLEYE5841F56D0244339B38A5DBF54EC2623

_____
**ANDREA MASLEY, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

651819/2022   NARIMANS TRUST INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 10/3
REALTY CORP. vs. RAFALSKY ESQ., THOMAS ET AL
Motion No.  002 003

Page 27 of 27

27 of 27